IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Albert Longoria,                                      Case No. 3:14CV2648

                Plaintiff

           v.                                   **ORDER**

Autoneum North America, Inc., et. al.,

               Defendants

      This is an employment discrimination case. Plaintiff Albert Longoria alleges defendants

Autoneum North America, Inc., and Mike Bishop, Al Mackie, and Tammy Klusmeyer violated

Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*, and O.R.C. § 4112.02.

      Longoria claims defendants, because of his race and national origin, failed to investigate

his complaints of discriminatory harassment and terminated his employment after he continued

to request remedial action.

      Jurisdiction is proper pursuant to 28 U.S.C. §§ 1331 and 1367.

      Pending are Longoria's motion for leave to file an amended complaint (Doc. 12) and

defendants' motions for partial judgment on the pleadings (Doc. 11) and to strike Longoria's

reply brief in support of the motion for leave (Doc 18).

Case: 3:14-cv-02648-JGC  Doc #: 25  Filed:  10/30/15  2 of 14.  PageID #: 215

For the reasons that follow, I grant the motion for leave to amend, deny the motion to strike, and grant in part and deny in part defendants' motion for partial judgment on the pleadings.

**Background**

Albert Longoria worked as a Production Supervisor for Autoneum North America, Inc. (Autoneum) from April 7, 2011 until his discharge in April, 2013. Longoria is a Hispanic male of Mexican heritage but American origin.

Sometime in Fall, 2012, Longoria discovered someone at work anonymously changed the background of his computer screen to a Mexican caricature. Offended by this act, Longoria reported the incident to his supervisor, Operations Manager Al Mackie, and requested a shift meeting to address the issue. Mackie, however, did not take remedial action.

A few weeks later, Longoria reported the matter to the Director of Human Resources, Tammy Klusmeyer. At this time Longoria learned Mackie had not reported the incident, but Klusmeyer assured Longoria the company would investigate.

One week later, Mackie suspended Longoria for allegedly violating a safety rule. Despite the suspension, Longoria continued to check with Mackie and Klusmeyer for updates on how the company was handling his discrimination complaint.

Longoria maintains that before reporting the incident, he preserved a pristine record, clear of negative reviews or adverse action. (Doc. 1 at ¶17). Autoneum denies this. (Doc. 5 at ¶17).

At his annual review in March, 2013, Longoria received a raise and a positive evaluation for his knowledge and attendance. However, the company transferred him to a new facility and placed him on a thirty-day performance improvement plan (PIP) due to alleged deficiencies

2

handling paperwork. (Doc. 1 at ¶18). Longoria perceived this review largely as a promotion, but Autoneum believed it had served notice of Longoria's performance issues.

After the stipulated thirty-day period, Longoria attended a meeting with Mackie and Klusmeyer and learned his PIP would last an additional sixty days. Two days after that meeting, however, Autoneum fired Longoria. Longoria alleges his new Operations Manager who had given him positive reviews and feedback was "never consulted, involved, or informed of the decision to terminate." (Doc. 5 at ¶21).

Longoria then filed charges with the Equal Employment Opportunity Commission (EEOC) and the Ohio Civil Rights Commission (OCRC) against Autoneum, Mackie, Klusmeyer, and the Plant Manager, Mike Bishop. He later formally withdrew the agency charges and obtained a right to sue letter.

Longoria's complaint in this court alleges defendants discriminated against him by failing to investigate or take corrective action after he reported racially motivated harassment, and by terminating his employment in retaliation for insisting the company rectify the situation.

## Discussion

### A.  Longoria's Motion for Leave to Amend

Rule 15(a) provides that, once a responsive pleading is on file, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a). The rule further provides that a "court should freely give leave when justice so requires." *Id*.

An essential aim of Rule 15 is to "reinforce the principle that cases 'should be tried on their merits rather than the technicalities of pleadings.'" *Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir. 1986) (quoting *Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982)). Accordingly,

courts must give due consideration to motions to amend in light of the rule's "liberal policy [in favor] of permitting amendments." *Turner v. City of Taylor*, 412 F.3d 629, 646 (6th Cir. 2005).

However, a court need not grant leave to amend simply as a matter of course. Rather, courts typically weigh various factors to determine whether leave to amend is warranted. These factors include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment." *Taylor v. Nat'l Grp. of Cos., Inc.*, 765 F. Supp. 411, 415 (N.D. Ohio 1990).

Longoria relies on the Sixth Circuit case *Johnson v. Ventra Group*, 1997 WL 468332, *7-10 (6th Cir.)(Table), where the Court of Appeals reversed the district court's denial of leave to amend even though: 1) the plaintiff had not sought such leave until thirteen months after the case began; and 2) permitting the amendment would necessitate extended discovery and a delay in proceedings.

Longoria argues such facts, which were sufficient in *Johnson* for a grant of leave under Rule 15's liberal policy favoring amendment, suggest I should grant leave here. He notes he sought leave to amend only seven months after the case began. Longoria also argues granting leave would not prejudice defendants or delay the proceedings.

Also relying on *Johnson*, defendants argue: 1) Longoria failed to act with due diligence or show good cause for failing to move for leave at an earlier time; and 2) granting Longoria's motion would unduly prejudice the defense.

I do not find defendants' arguments persuasive.

Plaintiff maintains his original complaint sufficiently alleges claims against defendants. In response to defendants' motion for partial judgment on the pleadings, plaintiff sought to

4

amend the complaint to clarify his allegations in light of alleged deficiencies and to dismiss certain claims in exchange for defendants' agreement to withdraw their motion.

The cause of delay was an attempt to negotiate. Plaintiff would not have sought to amend his complaint but for defendants' motion. Consequently, I am not persuaded the plaintiff failed to act with due diligence or lacks good cause for failing to move to leave at an earlier time.

Furthermore, Defendants do not explain how granting leave to amend would prejudice them. The mere assertion that an act will cause prejudice does not make it so.

The proposed amendments benefit the defendants by narrowing the scope of the complaint via voluntarily dismissal of some claims.[1] The proposed amended complaint does not materially change the substance of the original, and the defendants do not even assert that it does.

Nor, finally, will the amended complaint require the defendants to "expend significant additional resources to conduct discovery and prepare for trial" or be burdened by any significant delay in the resolution of the dispute. *Coleman v. Ohio State University Medical Center*, 2011 WL 3273531 (S.D. Ohio); *cf. Johnson*, *supra*, 1997 WL 468332, at *6 (holding prejudice against the defendants was not extreme, even though defendants would need to defend against new causes of action, as other factors outweighed the burden).

For these reasons, I grant the motion for leave to amend.[2]

### B.  Defendants' Motion for Partial Judgment on the Pleadings

Pursuant to Fed. R. Civ. P. 12(c), defendants seek dismissal of Longoria's: 1) Title VII race discrimination claims against individual defendants Bishop and Klusmeyer; 2) Title VII national

---

[1]  While this motion was still pending, Longoria voluntarily dismissed all claims against defendant Al Mackie pursuant to Fed. R. Civ. P. 41(a). (Doc. 24).

[2]  In the exercise of my discretion, I deny defendants' motion to strike Longoria's reply brief.

origin discrimination claims against all defendants; 3) Title VII retaliation claims against Bishop and Klusmeyer; and 4) all state law claims against Bishop and Klusmeyer. (Doc. 11).

### 1.  Standard of Review

Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Courts analyze a Rule 12(c) motion under the same standard as a Rule 12(b)(6) motion for failure to state a claim. *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2001) (citing *Mixon v. Ohio*, 193 F.3d 389, 399-400 (6th Cir. 1999)).

As a general rule, plaintiffs need not set out in detail the facts upon which their claims rest. To the contrary, a complaint simply must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This serves to give "the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Marsilio v. Vigluicci*, 924 F. Supp. 2d 837, 845 (N.D. Ohio 2013) (Lioi, J.).

Although the federal pleading standard does not require great detail, the factual allegations "in [a] complaint 'must be enough to raise a right to relief above the speculative level.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, *supra*, 550 U.S at 570).

I must "accept all well-pleaded factual allegations of the complaint as true and construe the complaint in the light most favorable to the plaintiff." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). Dismissal is proper only if the moving party is nevertheless clearly entitled to judgment as a matter of law. *McGlone v. Bell*, 681 F.3d 718, 728 (6th Cir. 2012).

### 2.  Federal Claims

#### a.  Race and Retaliation Claims

Defendants argue Longoria's Title VII claims cannot proceed against individual defendants Bishop and Klusmeyer as a matter of law, because only employers – not individual supervisors – can be liable for violating that statute.

I first note this part of defendants' motion is moot, as Longoria's amended complaint has omitted his claims against Bishop and Klusmeyer. In any event, I find this part of defendant's motion to be well-taken.

It is unlawful for an employer to discriminate against any individual on the basis of their because of race, national origin, sex, or religion. 42 U.S.C. § 2000e-2(a). Any person "aggrieved by" such discriminatory conduct may bring a civil action against the employer. 42 U.S.C. § 2000e-5(b).

Although Title VII is remedial in nature, the statute does not provide for individual liability. *Wathen v. GE*, 115 F.3d 400, 405 (6th Cir. 1997).

Here, Bishop and Klusmeyer were Longoria's supervisors at Autoneum. On this basis, I assume, plaintiff filed his Title VII claims against these defendants. But as defendants correctly point out, and as Longoria concedes, the original complaint fails to state a claim against Bishop and Klusmeyer because individual employees cannot be liable for a Title VII violation. *Id.*

#### b.  Waiver of Longoria's National Origin Claim

Defendants argue Longoria's national origin claim cannot proceed against any defendant because he failed to raise it before the EEOC.

This issue, too, is moot, given the allegations in Longoria's amended complaint. For the sake of completeness, however, I will grant defendants' motion to dismiss this claim.

7

As a general rule, plaintiffs cannot raise Title VII claims in a lawsuit that they did not include in an EEOC charge. *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010). Congress, "[i]n designating the procedure for challenging prohibited employment discrimination under Title VII . . . gave initial enforcement responsibility to the EEOC." *Id.* Permitting a Title VII action to proceed with additional claims beyond the scope of EEOC charges "would deprive the charged party of notice and would frustrate the EEOC's investigatory and conciliatory role." *Id.*

It is undisputed Longoria failed to claim, in his EEOC charge, the defendants discriminated against him on the basis of his national origin. Accordingly, he may not pursue a national origin claim in this court.

### 3.  Ohio Claims

#### a.  Claims for Racial and National Origin Discrimination

Defendants allege Longoria fails to state a claim of discrimination based on race or national origin under Ohio law against the individual defendants.

Under Ohio law, it is unlawful discrimination:

[f]or any employer, because of the race, color, religion, sex, military status, national origin, disability, age, or ancestry. . . to discharge without just cause, to refuse to hire, or otherwise to discriminate against [an individual] with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.

ORC Ann. § 4112.02(A).

To establish a *prima facie* case of a hostile work environment under § 4112.02, the plaintiff must show: 1) he was subject to unwelcome harassment; 2) the harassment was based on his protected status; 3) the harassment was sufficiently severe or pervasive as to affect "the terms, conditions, or privileges of employment"; and 4) the employer, through its agents, knew

8

or should have known of the harassment and failed to take immediate and appropriate corrective action. *Hampel v. Food Ingredients Specialties*, 89 Ohio St. 3d 169, 176-77 (2000).

Plaintiff alleges he was subject to "discriminatory and hostile [work] conditions." (Doc. 1 at ¶49). In response, defendants argue: 1) Ohio law, like federal law, does not support individual liability for supervisors; and 2) even if individual supervisors could be liable under Ohio law, Longoria's complaint does not plausibly allege defendants engaged in unlawful conduct.

In *Genaro v. Central Transport, Inc*., 84 Ohio St. 3d 293, 300 (1999), the Ohio Supreme Court held supervisors and managers "may be held jointly [and] severally liable with [a] employer for discriminatory conduct of the supervisor or manager." The court based its conclusion, in part, on the fact that the "definition of 'employer' found in R.C. 4112.01(A)(2) differs in several critical aspects from its Title VII counterpart." *Id*. at 299.

*Genaro* would, therefore, appear to allow Longoria to sue Bishop and Klusmeyer.

However, defendants cite *Hauser v. City of Dayton Police Dep't*, 140 Ohio St. 3d 268, 273 (2014), where the Ohio Supreme Court recently held a political subdivision supervisor could not be liable as an employer under § 4112.01(A)(1).

Some of the court's reasoning in *Hauser* contradicts its reasoning in *Genaro*.

In *Hauser*, the court stated "[t]here is no material difference between R.C. 4112.01(A)(2)'s use of the phrase 'person acting * * * in the interest of an employer' and Title VII's use of the phrase 'agent of' an employer." *Id*. at 272; *cf. Genaro*, 84 Ohio St. 3d at 298 ("R.C. [4112.01]'s definition of 'employer' is markedly different from the analogous Title VII provision).

The court squarely acknowledged this conflict, expressly stating, "[its] reasoning. . . calls the *Genaro* majority's reasoning into question, particularly its basis for distinguishing the prevailing interpretation of Title VII." *Hauser*, *supra*, 140 Ohio St. 3d at 273-274.

Nevertheless, the court took pains in *Hauser* not to overturn *Genaro*. To distinguish *Genaro*, the court noted that case involved "private-sector supervisors and managers, and…asked only whether such persons may be jointly and severally liable with [their] employer for conduct in violation of [R.C. 4112]." *Id*.

In contrast, *Hauser* involved a supervisor of a political subdivision; since *Genaro* "did not squarely address the immunity question at issue [in *Hauser*], it [was] not binding authority." *Id*. at 274. Given that factual distinction, the court avoided the question of "whether [it] should overrule [*Genaro*]." *Id*.

If *Genaro* is still good law, Longoria could proceed with his claims against Bishop and Klusmeyer under § 4112.02. Although I am inclined to agree with defendants *Genaro* is no longer good law, I need not definitively tackle the issue here. That is so, because Longoria has not plausibly alleged the harassment he experienced was sufficiently severe and pervasive to qualify as a hostile work environment.

A hostile work environment is one that, in essence, "alter[s] the conditions of the victim's employment and create an abusive working environment.'" *Brown v. Dover Corp*., 2007 WL 1296452, *38 (Ohio App.). As a general rule, "the conduct must be both subjectively and objectively severe and pervasive; that is, it must be offensive both to a reasonable person and the actual victim." *Id*.

In analyzing whether the alleged discriminatory harassment is actionable, considerations include "the frequency of the discriminatory conduct; its severity; whether it is physically

threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Hampel*, *supra*, 89 Ohio St. 3d at 180.

Here, Longoria alleges only a single incident of discriminatory harassment. (Doc. 1 at ¶10). He claims a coworker altered the background of his computer screen to display an image of a Mexican caricature. While that anonymous act is offensive and unjustifiable, the law generally requires a hostile *environment*.

But Longoria has pointed to no other hostile action by anyone at Autoneum. To be sure, Autoneum's delayed and dilatory investigation into Longoria's complaint may not be a model of how employers should handle complaints of discrimination. Nevertheless, the offensive conduct never recurred, and Longoria alleges he received positive work reviews, a promotion, and a raise not long after the alleged discrimination occurred. (Doc. 1 at ¶¶18-19).

An isolated episode, absent facts of extraordinary severity – which Longoria has not alleged – does not constitute a hostile environment. *Hampel*, *supra*, 89 Ohio St. 3d at 180-181 ("[I]t is essential that the work environment be viewed as a whole.").

In the Sixth Circuit case, *Nicholson v. City of Clarksville*, 530 F. App'x 434, 442 (6th Cir. 2013), the court emphasized that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) do not create a hostile work environment."

Simply put, Longoria's complaint hardly suggests a hostile work environment so severe or pervasive as to constitute a materially adverse change in the terms, conditions, or privileges of employment. Accordingly, even if *Genaro* were still good law, Longoria would not have a plausible claim against Bishop and Klusmeyer under O.R.C. § 4112.02.

11

**b.  Retaliation Claim Against Individual Defendants**

Remaining is Longoria's claim of retaliation under § 4112.02.[3]

Ohio law provides it is unlawful:

[f]or *any person* to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice [as defined in § 4112.02] or because that person has made a charge, testified…or participated in any manner in any investigation, proceeding, or hearing under [§§ 4112.01 to 4112.07].

ORC Ann. § 4112.02(I) (emphasis added).

Likewise, Ohio law forbids *any person*:

to aid, abet, incite, compel, or coerce the doing of any act declared by [§ 4112.02] to be an unlawful discriminatory practice, to obstruct or prevent any person from complying with [the law] or any order issued under it, or to attempt directly or indirectly to commit any act declared by [§ 4112.02] to be an unlawful discriminatory practice.

ORC Ann. § 4112.02(J).

The clear language of §§ 4112.02(I) and (J) indicate "no employer-employee relationship is required" to proceed with a suit for retaliation. *LeMasters v. Christ Hosp.*, 777 F. Supp. 1378, 1382 (S.D. Ohio 1991); *Hughes v. Miller*, 181 Ohio App. 3d 440, 447 (2009) ("Ohio's anti-retaliation law has a broader scope than Title VII because it does not limit coverage to people in an employer-employee [relationship].").

The nature of the employment relationship between plaintiffs and the individual defendants is therefore not relevant.

To establish a *prima facie* case of retaliation under Ohio law, the plaintiff must show that 1) he engaged in a protected activity; 2) the protected activity was known to defendants; 3) the defendants took adverse employment action against the plaintiff; and 4) there is a sufficient

---

[3] The brief for the motion to dismiss does not specifically address whether Longoria has alleged a plausible retaliation claim. For the reasons I give here, however, I conclude the complaint states a plausible retaliation claim.

causal connection between the protected activity and the adverse action. *Hughes*, *supra*, 181 Ohio App. 3d at 447.

In the present case, Longoria alleges he was protesting and seeking remedial action for something he perceived to be unlawful discriminatory harassment. He also alleges the defendants knew of the alleged harassment and his desire for corrective action. Furthermore, Longoria alleges Autoneum fired him.

There is no question Longoria pled plausible facts supporting the first three elements of a retaliation claim.

And, despite defendants' arguments to the contrary, I conclude Longoria's complaint alleges a plausible "causal connection."

Longoria contends he had a positive record prior to reporting the incident and subsequent termination. He also contends the individual defendants were present at meetings about his future with Autoneum, but his new manager who spoke positively of his work performance was neither present nor consulted. Finally, Longoria alleges none of the individual defendants took any action in response to his reported harassment, notwithstanding the continual pressure he applied to get them to investigate.

As a general principle:

> where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a *prima facie* case of retaliation. But where some time elapses between [an employer learning of] a protected activity and subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality.

*Nicholson*, *supra*, 530 F. App'x at 447.

Longoria asserts the alleged discrimination occurred sometime in the fall of 2012. Termination of his employment occurred in the Spring, and at least by April, 2013. Some courts

hold a period of less than six months is sufficient to establish a *prima facie* case, *see id.*, though it is unclear whether the time-lapse here was less than six months.

Nevertheless, the alleged facts taken as a whole create a reasonable inference of causation. Plaintiff is not required at the pleading stage to provide full-blown proof of causation. *Twombly*, *supra*, 550 U.S. at 575.

I find the plaintiff has sufficiently stated a *prima facie* claim of retaliation under § 4112.02, and I will deny the motion to dismiss the retaliation claim.

## Conclusion

It is, therefore,

ORDERED THAT:

1.  Plaintiff's motion for leave to amend (Doc. 12) be, and the same hereby is, granted;

2.  Defendant's motion to strike (Doc. 18) be, and the same hereby is, denied; and

3.  Defendant's motion for partial judgment on the pleadings (Doc. 11) be, and the same hereby is, granted in part and denied in part as provided herein.

So ordered.

/s/James G. Carr
Sr. U.S. District Judge